UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

CLARENCE WOODHOUSE,

        Petitioner,

    - against -

JAMES J. WALSH,

        Respondent.

------------------------------------------------------------ X

**OPINION AND ORDER**
11-cv-2945 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/19/15

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.    INTRODUCTION**

        Petitioner Clarence Woodhouse brings this pro se habeas corpus petition pursuant to section 2254 of Title 28 of the United States Code challenging his conviction from the County Court of Westchester County upon his plea of guilty to the crime of attempted robbery in the second degree.[1] Woodhouse was sentenced to and is now serving an indeterminate term of twelve years to life.[2]

---

    [1]    *See* Memorandum of Law in Support of the Petition for a Writ of Habeas Corpus ("Pet. Mem.") at 1.

    [2]    *See id.*

On April 21, 2011, Woodhouse filed the instant Petition,[3] challenging his conviction on the ground that his plea of guilty was not knowing or voluntary. For the following reasons, the Petition is denied.

## II.  BACKGROUND

The felony complaint states that Woodhouse approached Jovan Pennicooke on February 28, 2007 in Mount Vernon, New York asking for bus fare, and then demanding twenty dollars.[4]  Pennicooke refused.[5]  The complaint alleges that Woodhouse put his hand in his coat to simulate a gun.[6]  Pennicooke then complied with Woodhouse's demand and gave him the money.[7]  Woodhouse was

---

[3]    The so-called "mailbox rule" provides that a pro se prisoner's habeas petition is deemed filed the moment he delivers it to prison officials for mailing. *See Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "prisoner mailbox rule" described in *Houston v. Lack*, 487 U.S. 266, 276 (1988), to pro se prisoner habeas petitions). Furthermore, courts in the Second Circuit generally assume that a prisoner's papers are given to prison officials on the date they are signed. *See Johnson v. Coombe*, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001) ("Although it is not clear when the plaintiff gave his complaint to prison officials, absent evidence to the contrary, the Court assumes that the prisoner gave his petition to prison officials for mailing on the date he signed it.") (quotation marks and alterations omitted).

[4]    *See* Appendix of Defendant-Appellant, Ex. 1 to Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus ("Opp. Mem."), at A: 4.

[5]    *See id.*

[6]    *See id.*

[7]    *See id.*

arrested and charged shortly after the incident.[8]

Prior to his indictment, Woodhouse was examined for fitness to proceed by the local court pursuant to section 730 of the New York Criminal Procedure Law.[9] The two initial evaluations found Woodhouse unfit to proceed to trial.[10] Woodhouse is a schizophrenic and was taking multiple medications.[11] The court ordered a second set of psychiatric evaluations on August 21, 2007.[12] In a September 12, 2007 report, psychologist Ann Fenichel, Ph.D. found petitioner to be fit "[a]s long as [he] adheres with meds [and] remains this stable."[13] The September 24, 2007 report by psychologist N. Gonzalez-Miller, Ph.D. stated that Woodhouse's symptoms were "not interfering with his ability to participate in his court case."[14] Based on the second set of evaluations, the court found Woodhouse

---

[8] See Petitioner's Direct Appeal ("Pet. Direct App."), Ex. 3 to Opp. Mem., at 2.

[9] See id. at 3.

[10] See Pet. Mem. at 4.

[11] See id.

[12] See Pet. Direct App. at 4.

[13] Appendix of Defendant-Appellant at A: 22.

[14] Id. at A: 24.

fit to stand trial.[15]

These evaluations were completed six months prior to the March 2008 proceedings, during which Woodhouse entered his guilty plea to the crime of attempted robbery in the second degree.[16] During the proceedings on March 18, 2008, Woodhouse expressed that he was "a little confused," but that he knew he was "copping out."[17] He also told the court he was on medication and that he was "hearing voices."[18] The court explored Woodhouse's ability to understand the proceedings and explained the conditions of the plea in detail.[19] The court also provided Woodhouse with an opportunity to consult with his counsel.[20] Woodhouse answered questions reasonably and gave sworn assurances that his medications had not interfered with his ability to understand the proceedings.[21]

---

[15] *See* 7/18/11 Affidavit of John J. Sergi, Assistant District Attorney of Westchester County, in Opposition to Petition for Writ of Habeas Corpus at 4.

[16] *See* Petition for a Writ of Habeas Corpus ("Pet.") at 2.

[17] Appendix of Defendant-Appellant at A: 45.

[18] *Id.*

[19] *See id.* at A: 46–53.

[20] *See id.* at A: 52.

[21] *See* Opp. Mem. at 4.

Woodhouse also stated that he was entering into the plea "freely and voluntarily."[22]

On May 1, 2008, prior to sentencing, Woodhouse sent a letter to the court to recant his guilty plea on the basis that his lawyer "coherst [sic] [him]" into thinking it was his only option and that he was confused at the time of his plea based on the number of medications he was taking.[23] At the sentencing proceedings, Woodhouse reiterated these arguments.[24] The court denied Woodhouse's application to withdraw his plea and concluded that Woodhouse was "fully aware" of the benefit of the reduced charge he was accepting by pleading guilty.[25] The court was "fully satisfied that [his] plea was knowingly and voluntarily entered" under the circumstances.[26] The court then sentenced Woodhouse to an indeterminate term of twelve years to life.[27]

### B. Procedural History

Woodhouse appealed his conviction to the Appellate Division, Second

---

[22] *Id.*

[23] *Id.*

[24] *See id.* at 5.

[25] Appendix of Defendant-Appellant at A: 86.

[26] *Id.* at A: 87.

[27] *See id.*

Department, raising the sole claim that his plea was not knowing or voluntary.[28] The Appellate Division unanimously affirmed Woodhouse's conviction on September 22, 2009, holding that:

> The decision to grant a defendant permission to withdraw his guilty plea lies in the sound discretion of the County Court. The defendant's contention that he did not understand the consequences of his plea because he suffered from a psychiatric condition and was medicated at the time of his plea is belied by the transcript of the plea proceedings which demonstrates that the defendant appropriately answered the County Court's questions, allocuted the crime, and expressly stated that he understood the proceedings.[29]

Woodhouse submitted a letter seeking leave to appeal to the New York Court of Appeals.[30] On December 10, 2009, leave to appeal was denied because no question of law worthy of review was presented.[31] Woodhouse's petition for habeas corpus dated April 21, 2011 raises the same argument brought by Woodhouse on direct appeal.[32]

## III. LEGAL STANDARDS

---

[28]   See Pet. Direct App. at 2.

[29]   *People v. Woodhouse*, 65 A.D.3d 1267 (2d Dep't 2008).

[30]   See Petitioner's Request for Court of Appeals Reconsideration, Ex. 6 to Opp. Mem.

[31]   See Court of Appeals Decision Denying Reconsideration ("Recon. Denial"), Ex. 10 to Opp. Mem.

[32]   See Pet. at 15.

A.  **Deferential Standard for Federal Habeas Review**

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). The AEDPA provides that a federal court may not grant a writ of habeas corpus to a prisoner in custody pursuant to the judgment of a state court with respect to any claim, unless the state court's adjudication on the merits of the claim: "(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;"[33] or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[34]

A state-court decision is contrary to clearly established federal law, as determined by the Supreme Court, in the following two instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[35]

With regard to the "unreasonable application" prong, the Supreme

---

[33]  28 U.S.C. § 2254(d)(1).

[34]  *Id.* § 2254(d)(2).

[35]  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[36]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous. Rather, "[t]he state court's application of clearly established law must be *objectively unreasonable*."[37] This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[38] While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise habeas relief would be limited

---

[36] *Id.* at 407.

[37] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 559 U.S. 766, 773 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[38] *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

to state court decisions so far off the mark as to suggest judicial incompetence.'"[39] Furthermore, section 2254(d) applies to a defendant's habeas petition even where the state court order does not include an explanation of its reasoning.[40]

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for [section] 2254(d) applies when a "claim," not a component of one, has been adjudicated.[41]

Section 2254(d) also applies where a state court does not explicitly state in its opinion that it is adjudicating a claim on the merits.[42] "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

---

[39] *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)).

[40] *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[41] *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311–12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." (quotation marks and citation omitted))).

[42] *See id.*

absence of any indication or state-law procedural principles to the contrary."[43]

The deferential standard of review created by the AEDPA also extends to state-court factual determinations. Such determinations are presumed to be correct, and the petitioner must rebut them by clear and convincing evidence.[44]

### B. Statute of Limitations

Under section 2244(d)(1) of Title 28 of the United States Code, a state prisoner must file a habeas petition in federal court within one year from the date his conviction becomes final.[45] The limitations period runs from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[46] Because New York defendants may seek certiorari review before the United States Supreme Court within ninety days of denial of leave to appeal by the New York Court of Appeals, usually the limitations period begins to run ninety days after denial of leave to appeal by the New York Court of Appeals.[47]

---

[43] *Id.* at 99.

[44] *See* 28 U.S.C. § 2254(e)(1).

[45] 28 U.S.C. § 2244(d)(1).

[46] *Id.*

[47] *See McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (citing Sup. Ct. R. 13).

The one-year limitations period is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."[48] In addition, the one-year limitations period is not jurisdictional and may be tolled for equitable reasons in "rare and exceptional circumstances."[49]

### C. Plea Allocution

A state court violates due process if it accepts a guilty plea without an affirmative showing that the plea is knowing and voluntary.[50] That plea must be the product of "a voluntary and intelligent choice among the alternative courses of action open to the defendant."[51] The purpose of the court's "knowing and voluntary" inquiry "is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced."[52]

Under the federal constitutional standard, a state court should

---

[48] 28 U.S.C. § 2244(d)(2).

[49] *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001).

[50] *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

[51] *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). *Accord Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984).

[52] *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993) (emphasis in original).

determine the voluntariness of a guilty plea after "considering all of the relevant circumstances."[53] A state court may satisfy this requirement by conducting a factual basis inquiry at the plea allocution, where the defendant is asked "to explain, in his own words, the factual basis for his plea."[54] Moreover, on habeas review, "[a] state court's determination of the voluntariness of a defendant's guilty plea is a factual issue that is entitled to a presumption of correcteness[.]"[55] The petitioner must "rebut[] the presumption of correctness by clear and convincing evidence."[56]

## IV.  DISCUSSION

### A.  Statute of Limitations

Under the AEDPA statute of limitations, the one year time period for filing a federal habeas corpus petition starts on the date on which the judgment became final.[57] A conviction becomes final ninety days after the New York Court

---

[53] *Willbright*, 745 F.2d at 780 (citing *Brady v. United States*, 397 U.S. 742, 749 (1970)).

[54] *Id.* (citations omitted).

[55] *Murray v. McGinnis*, No. 00 Civ. 3510, 2001 WL 26213, at *4 (S.D.N.Y. Jan. 10, 2001) (citing 28 U.S.C. § 2254(e)(1); *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Senna v. Patrissi*, 5 F.3d 18, 20 (2d Cir. 1993)).

[56] 28 U.S.C. § 2254(e)(1).

[57] *See id.* § 2244(d)(1)(A).

of Appeals has denied leave to appeal.[58]  In the instant case, leave to appeal was denied on December 10, 2009.[59]  Woodhouse's conviction became final on March 10, 2010, and the statute of limitations expired on March 10, 2011.  Woodhouse's petition was dated April 21, 2011, one month after the limitations period expired.

Despite exceeding the statute of limitations, Woodhouse's petition qualifies for equitable tolling.  Equitable tolling applies in "rare and exceptional" circumstances.[60]  The petitioner must demonstrate that the circumstances "prevented him from filing his petition on time."[61]  That is, there must be a causal relationship between the extraordinary or exceptional circumstances and the late filing, which cannot be shown if, acting with reasonable diligence, the petitioner could have made a timely petition despite the extraordinary circumstances.[62]  Equitable tolling may be appropriate "where a [petitioner]'s medical condition or mental impairment prevented [him] from proceeding in a timely fashion."[63]

---

[58]   *See Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir. 2001).

[59]   *See* Recon. Denial.

[60]   *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

[61]   *Id*.

[62]   *See Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

[63]   *Zerilli–Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).

As an attachment to his petition, Woodhouse provided a letter demonstrating that he was admitted to the Residential Crisis Treatment Program from November 22–26, 2010 for psychiatric decompensation based on a need for monitoring and stabilization.[64] He was admitted to the Central New York Psychiatric Center from November 26, 2010 to March 1, 2011 for treatment of psychiatric decline.[65] The letter explicitly states that a patient in these facilities would not have access to any legal materials he was working on while admitted.[66] Woodhouse remained in a treatment facility without access to his legal materials for 98 days and filed his petition only 42 days late. Even if Woodhouse had acted with reasonable diligence upon his release on March 1, 2011, he had only nine days remaining to submit his petition by the March 10 deadline. Woodhouse has provided sufficient evidence to demonstrate that exceptional circumstances due to psychiatric impairment left him without legal materials prior to the termination of the statutory period. Accordingly, petitioner satisfies the extraordinary circumstance test and equitable tolling is appropriate.

      B.      **Plea Allocution**

---

[64]    *See* Pet. at 16.

[65]    *See id.*

[66]    *See id.*

Woodhouse argues that he did not knowingly and voluntarily enter his plea. Woodhouse points to the numerous medications he was taking at the time of his plea, his diagnosed schizophrenia, and the confusion he admitted during the proceedings.[67] During the allocution, however, petitioner had opportunities to consult with counsel and demonstrated a "rational as well as factual understanding of the proceedings against him."[68] The trial court inquired as to whether petitioner understood the proceedings and implications of the plea.[69] Woodhouse gave sworn assurances that his medications had not interfered with his ability to understand and that he was entering into the plea "freely and voluntarily."[70]

The Appellate Division found that Woodhouse's arguments that his plea was not knowing or voluntary were contradicted by the record.[71] The Appellate Division determined that Woodhouse "appropriately answered the County Court's questions, allocuted the crime, and expressly stated that he

---

[67] *See* Pet. Mem. at 3.

[68] *Dusky v. United States*, 362 U.S. 402, 402 (1960).

[69] *See* Appendix of Defendant-Appellant at A: 46–53.

[70] Opp. Mem. at 4.

[71] *See People v. Woodhouse*, 65 A.D.3d 1267 (2d Dep't 2008).

understood the proceedings."[72]

A state court's factual determination is reviewed under the deferential standard of the AEDPA. This is especially true when it comes to determinations of competency as a trial court has a "superior ability to appraise witness credibility and demeanor."[73] The only way to rebut the presumption of correctness is with clear and convincing evidence.[74] In the instant case, Woodhouse fails to present clear and convincing evidence to rebut the state court's decision that his plea was entered into knowingly and voluntarily. Thus, petitioner's claim is rejected.

## V. CONCLUSION

For the foregoing reasons, the Petition is denied. The remaining issue is whether to grant a certificate of appealability ("COA"). For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional

---

[72] *Id.* Petitioner fails to demonstrate that the state court's decision constituted an objectively unreasonable application of clearly established federal law under the standard for finding that a plea was entered "knowingly and voluntarily" as set forth in *Boykin*, 395 U.S. 238.

[73] *Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (holding that "issues [whose] resolution depends heavily on the trial court's appraisal of [] credibility and demeanor" deserve a presumption of correctness). *Accord Alexandre v. Senkowski*, 126 Fed. App'x 7, 12 (2d Cir. 2005) (holding that the state court's evaluation of credibility based on testimony and observation of petitioner during proceedings was not an unreasonable determination of facts).

[74] *See* 28 U.S.C. § 2254(e)(1).

right."[75] A "substantial showing" does not require a petitioner to show that he would prevail on the merits, but merely that reasonable jurists could disagree as to whether "the petition should have been resolved in a different manner or [whether] the issues presented were 'adequate to deserve encouragement to proceed further.'"[76] Petitioner has made no such showing. Thus, I decline to grant a COA The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
June 19, 2015

---

[75] Id. § 2253(c)(2).

[76] Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

- **Appearances** -


**Petitioner (Pro Se):**

Clarence Woodhouse
SBI# 08 A 3280
Green Haven Correctional Facility
PO Box 4000
Stormville, New York 12582-0010


**For Respondent:**

John J. Sergi
Assistant District Attorney
Westchester County
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, New York 10601
(914) 995-4457